GEORGE GLEISTMAN, RELATOR, v. TOWN OF WEST NEW
YORK AND ORD DARLING ET AL., MEMBERS OF THE
POLICE COMMITTEE, RESPONDENTS.

Argued June 5, 1906—Decided November 21, 1906.

1. *Mandamus* will not issue to interfere with the discretion of a
body having control of the police force of a town in its manage-
ment of that force.
2. The writ will not issue to disturb or overrule determinations of
questions of fact committed to the discretion of the officer or
body whose action is under review.
3. The allowance of this writ rests in judicial discretion. It is only
used when the act to be done is a ministerial one merely and the
duty to perform it in a definite way is clear.

On rule to show cause why *mandamus* should not issue.

Before Justices FORT, GARRETSON and REED.

For the relator, *Warren Dixon.*

For the respondents, *Abel I. Smith & Mabon.*

The opinion of the court was delivered by

GARRETSON, J. The town of West New York is a body
corporate under the provisions of an act entitled "An act
providing for the formation, establishment and government
of towns." *Pamph. L.* 1895, *p.* 218. By section 50 of the
act it is provided that the town council shall have power, by
ordinance, to provide for, establish, regulate and control a
day and night police, and to regulate and define the manner
of their appointment and removal, their duties and compen-
sation, provided that no police officer shall be removed except
for neglect of duty, misbehavior, incompetency or inability
to serve. Section 25 of the same act provides that the sal-
aries and compensation to be paid to the chief of police and

the members of the police force shall be fixed by ordinance of the town council.

Section 26 provides that all the officers of the town shall be governed by such general ordinance as the town council may from time to time adopt, not inconsistent with the provisions of the act and the laws of this state, and every officer may be removed from office for cause by a two-thirds vote of all the members of the council, but no such removal shall take place until the person sought to be removed shall have had an opportunity of being heard in his own defence.

On the 18th of March, 1899, an ordinance was passed by the town council providing for the establishment of a day and night police. By this ordinance a police force was provided for, to consist of one sergeant of police, one roundsman and a number of patrolmen, not to exceed one for each eight hundred inhabitants. The ordinance also provided that there shall be a police committee, consisting of the chairman of the town council and three other members thereof, to be appointed by the chairman of the town council, whose duty it shall be to enforce such rules and regulations for the government, control and discipline of the police. Rules were adopted November 11th, 1901.

From the agreed state of facts, it appears that the police committee, after January 1st, 1906, consisted of the chairman of the council and four other members. The ordinance fixed the salaries of the sergeant, roundsman and patrolmen, and provided also that the chairman of the town council should possess all the powers vested by law in the chief of police until a chief of police should be appointed. December 19th, 1905, an amendatory ordinance was passed, providing that the police force should consist of one captain, two sergeants and eight patrolmen, and provided that the annual salary of the captain should be $1,100.

This ordinance was advertised December 20th, 1905, and became effective five days thereafter. See act concerning towns, *supra,* section 46.

On December 26th, 1905, the following resolution was adopted: *"Resolved,* That George Gleistman be and he

hereby is appointed captain of the police force of the town of West New York, this appointment to take effect immediately."

Prior to and at the time of the passage of this resolution the relator was a sergeant of police in the police force of the town.

The relator, claiming that he has been removed from the office of captain of police, applies for a *mandamus* to compel the town of West New York, and the chairman and four persons designated as members of the police committee, to place or reinstate him in the office of captain of police.

It is agreed that no resolution has ever been passed or adopted by the council of said town removing or attempting to remove the relator from the office of captain of police, nor have any charges been preferred against him.

No statute, ordinance, resolution or rule has been shown defining the duties of captain of police of the town, and we are left entirely to conjecture what those duties are.

The relator relies upon the following acts as constituting his removal from the office of captain of police:

He testifies that on January 3d, when he reported for duty at his usual hour, at two o'clock in the morning, Roundsman Bauer informed him that he (Bauer) was placed at the head of the police department as acting chief by the police committee and Mayor Ord Darling, and the roundsman said to him that the mayor wished the relator to give over his keys to the roundsman, so that he could give them to the mayor, as he wished to look over his books, and he did so; that Officer Brinkman was in charge of the desk; that Brinkman told him to patrol the east side of Bergenline avenue; that he put on his uniform and left the station-house; that in the morning he went to the mayor's office and saw the mayor, and asked him if it was his orders that he (the relator) was to give up the keys, and he said it was; that he also asked him if it was his orders that the relator should patrol the east side of Bergenline avenue, and the mayor said that Officer Bauer had full charge of the police department, and

that he would have a notice up in the hall to that effect. The following notice was afterwards put up in the city hall:

     "WEST NEW YORK, N. J., January 2d.
"General Order No. 1.

"On and after this date Officer John H. Bauer is placed in charge of the police force of this town until further orders. He will be obeyed and respected accordingly.

"By order of           ORD DARLING."

He also testified that since that time he has not been permitted to discharge his duties as captain; that he has reported for duty regularly; that in the police department subordinates are required to salute their superior officers; that since January 3d the men have not saluted him as captain, or obeyed him as captain; that he has asked them to do so and they told him they were informed not to; that he hasn't been allowed to stay in the office to perform his duties; that he has been denied access to the desk and the office by Officer Corliss, one of the patrolmen; that salary was offered to him as sergeant, but he refused to accept it because it was not the salary provided by the ordinance for captain of police. The relator also testifies· that from the time he became captain until the 3d of January he performed the same duties he had previously performed as sergeant; he inspected the men, gave orders, had charge of the station-house and sent out the men.

The chairman of the council, who is also called mayor, and by virtue of his office is chief of police, testifies that he put Officer Bauer in charge of the police force as acting chief, and ordered all officers to take orders from him, and told Bauer not to salute Gleistman nor take any orders from him, but to give that order himself.

It appears from a report of Ord Darling to the town council, on January 20th, that on January 2d, as an experiment for the betterment of the department, the police committee recommended that the superior officers be instructed to do patrol duty, and that the patrolmen do desk duty until further

orders, and that he (Darling), as chief of police, on January 26th, suspended Officer Gleistman for disobeying orders. It further appears in the minutes of the same meeting Mayor Darling presents a report of Officer Corliss, that on January 25th Officer Gleistman refused to go on post 4 at six o'clock in the evening; that he said he was captain and not going on post.

The relator cannot determine for himself what the duties of captain are. They must be defined by the council.

Inasmuch as no duties had ever been prescribed for a captain of police in the town, and as the relator was not the head officer of the police force, but the mayor and head of the police committee was chief of police, we are not able to perceive why the relator was not bound to obey the orders of his superior officer and perform such duties as he directed.

Should a *mandamus* issue as prayed for "to place or reinstate the said George Gleistman in the office of captain of police of the said town of West New York and to permit him to perform and discharge the duties of said office," as asked for in rule to show cause, we are unable to see what action of the council would be taken to obey the writ.

The government, regulation and control of the police force of the town being vested by law in the town authorities, this court has no power to interfere with their discretion in the management of the police force when that discretion is exercised in accordance with law. *Benedict* v. *Howell,* 10 *Vroom* 221; *Mooney* v. *Edwards,* 22 *Id.* 479; *Conger* v. *Chosen Freeholders,* 26 *Id.* 112.

The writ will not issue to disturb or override determination of questions of fact committed to the discretion of the officer or body whose action is under review.

The allowance of a writ of *mandamus* rests in judicial discretion. It is only used when the act to be done is a ministerial one merely, and the duty to be performed in a definite way is clear. *Kirchgessner* v. *Board of Health,* 24 *Vroom* 594.

The rule to show cause is discharged. The respondents are entitled to costs.